UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTHONY M. SMITH,

                    Plaintiff,

v.                                     Case No. 13-2605-CM

HILLSHIRE BRANDS,

                    Defendant.

## ORDER

The plaintiff, Anthony M. Smith, proceeding pro se, has sued his former employer, Hillshire Brands,[1] for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Family and Medical Leave Act ("FMLA").[2] Defendant has filed a motion to compel plaintiff to respond to discovery requests seeking information relating to (1) his electronic communications with others about the allegations raised in his complaint, (2) prior litigation or administrative proceedings to which he was a party, (3) his social networking activity, and (4) his employment history since January 1, 2009, including the identity of

---

[1]Defendant refers to itself as "The Hillshire Brands Company," but for the purposes of this order, the court will refer to defendant by the name reflected on the court's electronic docket sheet.

[2]Plaintiff also brought a claim under the Americans with Disabilities Act, but the presiding U.S. District Judge, Carlos Murguia, dismissed that claim on May 16, 2014. ECF doc. 32.

entities with whom he has sought employment **(ECF doc. 33)**.  For the reasons discussed

below, the motion is granted in part and denied in part.

## I.      Background

Plaintiff began working for defendant in January 2011 as a production technician.  He

states that in January 2013, he filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC").[3]  He alleges that in the months after this administrative

filing, his supervisors subjected him to instances of discriminatory conduct.  During at least

a portion of his employment, plaintiff was entitled to intermittent absences under the FMLA.

Plaintiff alleges that he received time off under the FMLA because of stress caused by

defendant.  In a letter dated August 30, 2013, a company called Reed Group (presumably a

benefits-processing company utilized by defendant) informed plaintiff, with a copy to

defendant, that his intermittent FMLA leave was approved through February 16, 2014.  On

September 3, 2013, defendant discharged plaintiff.

Plaintiff filed this action on November 26, 2013, alleging that his discharge violated

Title VII and the FMLA.  Plaintiff seeks $1,000,000 in damages for medical expenses, lost

wages, and emotional distress.[4]  Defendant served its first interrogatories and first requests

for production of documents to plaintiff on February 24, 2014.  Plaintiff responded and later

supplemented his responses, but defendant remains unsatisfied with some of plaintiff's

---

[3]The contents of this charge are unclear, as a copy of the charge is not in the current record.

[4]See ECF doc. 1 at 4; ECF doc. 33-1 at 22–23 (plaintiff's original responses to interrogatories); *id.* at 64 (plaintiff's supplemental responses to interrogatories).

answers.  Defendant asks the court to compel plaintiff to fully respond to Interrogatory Nos. 7 and 11, and Request for Production Nos. 3, 9, 15, and 18.

## II.   Legal Standards

Under Fed. R. Civ. P. 26(b)(1), discovery may be obtained "regarding any nonprivileged matter that is relevant to any party's claim or defense." "Relevancy is broadly construed during the discovery phase, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[5]  At least as a general proposition, then, "[a] request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party."[6]  "When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance."[7]  The party making the discovery request has the burden if relevance is not readily apparent.[8]

---

[5]*Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 523 (D. Kan. 2010) (quoting *Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005) and *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004)).

[6]*Sheldon v. Vermonty*, 204 F.R.D. 679, 689–90 (D. Kan. 2001) (internal quotations and citations omitted).

[7]*Cardenas*, 232 F.R.D. at 380 (quoting *Owens*, 221 F.R.D. at 652).

[8]*Id.*

III.     **Discovery Sought**

A.     **Plaintiff's Electronic Communication Regarding Conduct Alleged**

Defendant's Request No. 3 sought plaintiff's communications regarding the allegations raised in plaintiff's complaint:

> Request No. 3: All documents constituting or relating to communications by and between you and any third party, person, entity or organization regarding alleged retaliation at Hillshire and/or any other allegations raised in your complaint.

Defendant's motion asks the court to compel plaintiff to produce e-mails that are responsive to this request. Defendant notes that plaintiff has referred to responsive e-mails in other documents, but has not produced any such e-mails. Plaintiff has informed defense counsel that he did not save the e-mails. In his response to the motion, plaintiff states simply, "I have submitted everything I have."[9]

There is no dispute that Request No. 3 sought relevant discovery. Defendant correctly asserts that plaintiff had an obligation to preserve e-mails related to his claims once litigation was reasonably foreseeable.[10] "Such preservation may not be 'selective,' saving only the evidence supporting a theory of liability and impeding the examination of another theory."[11] Failing to preserve evidence—including electronic material—that another party might use

---

[9]ECF doc. 34 at 3.

[10]*See Helget v. City of Hays*, No. 13-2228, 2014 WL 1308893, at *2–3 (D. Kan. March 31, 2014).

[11]*Id.* at 3 (quoting *Benton v. Dlorha, Inc.*, No. 06-2488, 2007 WL 3231431, at *4 (D. Kan. Oct. 30, 2007)).

in pending or reasonably foreseeable litigation is deemed "spoilation."[12]  If it is found that plaintiff engaged in spoilation, there are a variety of sanctions that the court may impose against plaintiff, including, if the spoilation is found to be particularly egregious, dismissal of this case.[13]

At this juncture, defendant is not requesting sanctions.  Rather, defendant asks that plaintiff attempt to recover relevant e-mails—perhaps by contacting his e-mail service provider.  The court finds this request reasonable and grants defendant's motion regarding this discovery.  Plaintiff is therefore ordered to immediately take steps to recover deleted e-mails that mention or relate to the allegations he raises in this case, including contacting his e-mail service provider for assistance.[14]  By **July 3, 2014**, plaintiff shall inform defendant of the *specific* steps that he has taken to recover responsive e-mails and the progress that he has made toward that end.  Defendant may then decide whether to pursue spoilation sanctions against plaintiff.

### B.   Information About Plaintiff's Prior Lawsuits and Administrative Proceedings

Defendant's Interrogatory No. 7 and Request No. 9 sought information and documents relating to any lawsuit or administrative proceeding to which plaintiff has been a party:

---

[12]*Id.*

[13]*Id.* at 6 (citing *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1179 (10th Cir. 2009)).

[14]Defendant states that it has provided plaintiff a list of search terms to assist him in locating responsive e-mails.

Interrogatory No. 7: Please state the full title, court, and docket number of all other litigation, arbitrations, and administrative proceedings (such as Equal Employment Opportunity Commission proceedings) in which you have ever been involved as a plaintiff, defendant, claimant, complainant, or respondent. As to each matter listed, please state the general nature of the claim, the nature of your involvement, and the final disposition of the action.

Request No. 9: All documents relating in any way to any lawsuit, claim, charge, or complaint made by or against any person, entity, or organization (other than Hillshire) by or against you, including, but not limited to, any and all documents which you used, displayed, sent, or gave, in while or in part, to a court, the EEOC, or any other administrative agency, and any and all documents which a court, the EEOC, or other administrative agency used, displayed, sent, or gave, in whole or in part, to you in connection with your lawsuit, claim, charge, or complaint.

Plaintiff's response to both of these discovery requests was "none." Defendant reports, however, that in a telephone conversation with defense counsel, plaintiff stated that he filed a complaint with the EEOC against his prior employer, Caravan Ingredients.

The court agrees with defendant that information about plaintiff's litigation history is relevant because it could lead to the discovery of admissible evidence regarding plaintiff's credibility and claim for damages. In his response to the motion, plaintiff does not dispute relevance, but instead denies that he has "ever been in court or litigation against [any] company of my pas[t]."[15] This answer fails to address the questions of what administrative claims (e.g., EEOC claims), if any, plaintiff has filed and whether plaintiff has been a party to litigation other than that involving a former employer. Therefore, defendant's motion is granted as to these two discovery requests. By **July 3, 2014**, plaintiff is ordered to either

---

[15]ECF doc. 34 at 1.

provide documents and information related to *any* past administrative claims or lawsuits, or to provide a sworn statement to defendant that he has not been a party to any other lawsuit or claim, including an affirmative statement that he has filed no claims with the EEOC against any employer other than defendant.

### C.     Social Networking Documents

Defendant's Requests Nos. 15 and 18 sought documents showing plaintiff's activity on social networking sites:

> Request No. 15: All documents constituting or relating in any way to any posting, blog, or other statement you made on or through any social networking website, including but not limited to Facebook.com, MySpace.com, Twitter.com, Orkut.com, that references or mentions in any way Hillshire and/or the matters referenced in your Complaint.

> Request No. 18: Electronic copies of your complete profile on Facebook, MySpace, and Twitter (including all updates, changes, or modifications to your profile) and all status updates, messages, wall comments, causes joined, groups joined, activity streams, blog entries, details, blurbs, and comments for the period from January 1, 2013, to present.  To the extent electronic copies are not available, please provide these documents in hard copy form.

In response, plaintiff did not object to the requests, but instead stated that he produced all responsive documents on April 25, 2014.  Plaintiff has informed defendant that he maintained several Facebook accounts and a Twitter account during the relevant time period.  Defendant states in its motion that plaintiff, however, has produced only limited information from his Facebook account and no information from his Twitter feed.  In response to the motion to compel, plaintiff objects on relevancy and privacy grounds to producing additional information from Faceboook, stating that it reveals his "most personal conversations with

friends that has nothing to do with this case" and "highly personal data like sexual talking and business that is no concern to Hillshire."[16]  Plaintiff has not addressed his activity on other social networking sites.

The court first notes that plaintiff does not appear to object to producing documents responsive to Request No. 15, i.e., social networking documents that directly reference or mention defendant or matters raised in plaintiff's complaint.  Thus, to the extent that he hasn't already, plaintiff is ordered to produce such documents to defendant by **July 3, 2014.** If plaintiff has no additional responsive documents to produce—if, for example, nothing on plaintiff's Twitter feed references defendant or the matters raised in this case—plaintiff shall provide a sworn statement to defendant so stating by that same date.

Request No. 18 raises a more complex issue, as it seeks documentation of *all* of plaintiff's activity on the named social networks since January 1, 2013, regardless of whether the activity has anything at all to do with this case or the allegations made in plaintiff's complaint.  Defendant asserts that this broad swath of information is relevant for at least two reasons.  First, it "provide[s] a contemporary diary of Plaintiff's activities, thoughts, mental/emotional condition, and actions," which relate to plaintiff's claim for damages arising from emotional distress.[17]  Second, it may support defendant's "defense that Plaintiff

---

[16]ECF doc. 34 at 2.

[17]ECF doc. 33 at 8.

abused his FMLA leave, which is the true reason for Plaintiff's termination."[18]  Defendant contends that the protective order governing this case adequately addresses plaintiff's privacy concerns.

Request No. 18, in contrast to Request No. 15, seeks information that does not appear relevant on its face.  Although it is apparent to the court that plaintiff's social networking activity that references in any way defendant or matters asserted in plaintiff's complaint is relevant, it is less apparent why unfettered access to plaintiff's social media activity over the past year-and-a-half is relevant.  The burden therefore falls on defendant to establish relevancy.[19]

As it currently stands, the record does not support defendant's extremely broad discovery request for all-inclusive access to plaintiff's social media accounts.  As plaintiff notes, such access could reveal highly personal information—such as plaintiff's private sexual conduct—that is unlikely to lead to admissible evidence in this case.  Information on social networking sites is not entitled to special protection, but a discovery request seeking it nevertheless must meet Fed. R. Civ. P. 26's requirement that it be tailored "so that it 'appears reasonably calculated to lead to the discovery of admissible evidence.'"[20]

---

[18]*Id.*

[19]*Cardenas*, 232 F.R.D. at 380.

[20]*Davenport v. State Farm Mut. Auto. Ins. Co.*, No. 3:11-cv-632-J-JBT, 2012 WL 555759, at *1 (M.D. Fla. Feb. 21, 2012) (quoting Fed. R. Civ. P. 26(b)(1)); *see also Ogden v. All-Star Career Sch.*, No. 2:13cv406, 2014 WL 1646934, at *1 (W.D. Pa. April 23, 2014) (holding that discovery request seeking complete access to the plaintiff's social networking
(continued...)

"Otherwise, the Defendant would be allowed to engage in the proverbial fishing expedition, in the hope that there might be something of relevance in Plaintiff's [social networking] account[s]."[21]  The court agrees with courts that have recognized that a discovery request for unfettered access to social networking accounts—even when temporally limited—would permit the defendant "to cast too wide a net" for relevant information.[22]  As the court reasoned in *Ogden v. All-Star Career School*,

> Ordering plaintiff to permit access to or produce complete copies of his social networking accounts would permit defendant to cast too wide a net and sanction an inquiry into scores of quasi-personal information that would be irrelevant and non-discoverable. Defendant is no more entitled to such unfettered access to plaintiff's personal email and social networking communications than it is to rummage through the desk drawers and closets in plaintiff's home.[23]

Indeed, if the court were to accept defendant's position on the scope of relevant discovery, defendant would likely be unhappy with the ramifications.  For example, *every* Facebook post of every Hillshire manager and supervisor involved in the decision to terminate plaintiff could be deemed relevant because it might show discriminatory pretext.

---

[20](...continued)
activity was "far beyond the scope of discovery authorized by Rule 26"); *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570 (C.D. Cal. 2012) (same).

[21]*Davenport*, 2012 WL 555759, at *1 (quoting *Tompkins v. Detroit Metro. Airport*, No. 10-10413, 2012 WL 179320, at *2 (E.D. Mich. Jan 18, 2012)).

[22]*Ogden*, 2014 WL 1646934, at *4; *Mackelprang v. Fid. Nat'l Title Agency of Nev., Inc.*, No. 2:06-CV-00788-JCM, 2007 WL 119149, at *7 (D. Nev. Jan 9, 2007).

[23]2014 WL 1646934, at *4.

Defendant has cited *Held v. Ferrellgas, Inc.,*[24] a District of Kansas case, in support of Request No. 18.  In *Held*, the plaintiff claimed that the defendant retaliated against him for reporting a claim of discrimination.  Without much stated analysis, the court found that information on the plaintiff's Facebook page during his one-year tenure at the defendant's company was relevant to plaintiff's claim and ordered it produced.  The undersigned is not persuaded, however, that *Held* supports defendant's position—in fact, it could be read as adverse to that position. The opinion states that the defendant was "not seeking unfettered or unlimited access to Plaintiff's Facebook, but rather limited access during the relevant time frame."[25]  From this description, it appears that defendant here is seeking broader access to information on plaintiff's social networking sites than the court permitted in *Held*—the unrestricted access sought by Request No. 18 cannot be described as "limited," as it was in *Held*.[26]  In any event, given the absence of detail and analysis in *Held*, the court declines to rely on it either to support or to defeat defendant's position.[27]

---

[24]No. 10-2393-EFM, 2011 WL 3896513 (D. Kan. Aug. 31, 2011).

[25]*Id.* at *1.

[26]Of course, the *Held* court may have described the access sought as "limited" based on nothing more than the fact that a particular time frame was set—in which case, Request No. 18 is similar.  Unfortunately, the request at issue in *Held* was not quoted or described in detail in the opinion.

[27]*But see Kear v. Kohl's Dept. Stores, Inc.*, No. 12-cv-1235-JAR-KGG, 2013 WL 3088922, at *6 (D. Kan. June 18, 2013) (relying solely on *Held* to find that defendant's request for plaintiff's "Twitter and Facebook account data between her date of hire through present" was sufficiently limited in scope); *Moore v. Miller*, No. 10-cv-651-JLK, 2013 WL 2456114, at *2 (D. Colo. June 6, 2013) (relying solely on *Held* to find plaintiff's "entire
(continued...)

Defendant asserts that plaintiff's social networking activity is relevant to his claim of

emotional distress, and this position finds some support in the caselaw.[28]   But other courts

have noted that only social networking activity that specifically pertains to the plaintiff's

emotional state is relevant to an emotional distress claim.[29]   As one court reasoned, "To be

sure, anything that a person says or does might in some theoretical sense be reflective of her

emotional state.   But that is hardly justification for requiring the production of every thought

she may have reduced to writing, or, indeed, the deposition of everyone she may have talked

to."[30]   In addition, some courts have gone so far as to question the probative value of social

---

[27](...continued)
Facebook history" relevant to plaintiff's claims of emotional pain and suffering arising from
his arrest).

[28]*See, e.g., Reid v. Ingerman Smith LLP*, No. 12–CV–307(ILG)(MDG), 2012 WL
6720752, at *2 (E.D.N.Y.  Dec. 27, 2012) (holding that "statements regarding plaintiff's
social activities may be relevant to plaintiff's claims of emotional distress and loss of
enjoyment of life," but nonetheless declining to order "full disclosure of all material on
plaintiff's social media accounts because not all postings"—such as birthday wishes—"will
be relevant to her claims"); *Robinson v. Jones Lang LaSalle Ams., Inc.*, No. 12–CV–127-PK,
2012 WL 3763545, at *1 (D. Ore. Aug. 29, 2012) (finding it "reasonable to expect severe
emotional or mental injury to manifest itself in some social media content"); *Bass v. Miss
Porter's Sch.*, No. 3:08cv1807 (JBA), 2009 WL 3724968, at *1 (D. Conn. Oct. 27, 2009)
("Facebook usage depicts a snapshot of the user's relationships and state of mind at the time
of the content's posting.").

[29]*EEOC v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 435 (S.D. Ind. 2010) (noting,
"the simple fact that a claimant has *had* social communications is not necessarily probative
of the particular mental and emotional health matters at issue in the case . . . it must be the
substance of the communication that determines relevance").

[30]*Rozell v. Ross–Holst*, No. 05 CIV 2936(JGK)JCF, 2006 WL 163143 at *3–4
(S.D.N.Y. Jan. 20, 2006) (denying motion to compel production of the plaintiff's e-mails
which the defendant asserted would "provide a contemporaneous record of her emotional
(continued...)

networking activity as reflective of a plaintiff's emotional state.  For example, United States

Magistrate Judge A. Kathleen Tomlinson on the Eastern District of New York has noted,

"The fact that an individual may express some degree of joy, happiness, or sociability on

certain occasions sheds little light on the issue of whether he or she is actually suffering

emotional distress."[31]  Citing a law review article on the topic, Judge Tomlinson reasoned,

"a severely depressed person may have a good day or several good days and choose to post

about those days and avoid posting about moods more reflective of his or her actual

emotional state."[32]

     Based on the limited record before it, the court finds it prudent to follow what appears

to be the intermediate approach taken by courts addressing this issue—to allow defendant

to discover not the contents of plaintiff's entire social networking activity, but any content

---

[30](...continued)
state"); *see also Giacchetto v. Patchogue-Medford Union Free Sch. Dist.*, 293 F.R.D. 112, 115 (E.D.N.Y. 2013) ("If the Court were to allow broad discovery of Plaintiff's social networking postings as part of the emotional distress inquiry, then there would be no principled reason to prevent discovery into every other personal communication the Plaintiff had or sent since alleged incident.");  *Holter v. Wells Fargo & Co.*, 281 F.R.D. 340, 344 (D. Minn. 2011) ("While everything that is posted on a social media website is arguably reflective of a person's emotional state. [sic] This Court would not allow depositions of every friend and acquaintance to inquire about every conversation and interaction with plaintiff. So too, the Court will not require plaintiff to produce all information from all her social media websites to obtain similar information.").

[31]*Giacchetto*, 293 F.R.D. at 115.

[32]*Id.* at 116 (citing Kathryn R. Brown, *The Risks of Taking Facebook at Face Value: Why the Psychology of Social Networking Should Influence the Evidentiary Relevance of Facebook Photographs*, 14 Vand. J. Ent. & Tech. L. 357, 365 (2012) ("Because social networking websites enable users to craft a desired image to display to others, social scientists have posited that outside observers can misinterpret that impression.")).

that reveals plaintiff's emotions or mental state, or content that refers to events that could reasonably be expected to produce in plaintiff a significant emotion or mental state.[33]  The court concludes that this approach will permit defendant to discover information relevant to plaintiff's emotional state, which he has put at issue, while protecting plaintiff from a fishing expedition into every thought he reduced to writing on the internet since January 1, 2013. Thus, defendant's motion to compel plaintiff to respond to Request No. 18 is granted, but with the important limitation that it only be read to encompass references to his emotional state and references to potential causes of that emotional state.  Plaintiff is ordered to produce such documents to defendant by **July 3, 2014.**

### D.    Information About Plaintiff's Employment History

Defendant's Interrogatory No. 11 sought information regarding plaintiff's employment history from January 1, 2009, through the date of his answer to the interrogatory

---

[33]*See Ogden*, 2014 WL 1646934, at *5; *Giacchetto*, 293 F.R.D. at 116; *Holter*, 281 F.R.D. at 344; *Simply Storage*, 270 F.R.D. at 435; *Reid*, 2012 WL 6720752, at *2; *Robinson*, 2012 WL 3763545, at *1; *Sourdiff v. Tex. Roadhouse Holdings, LLC*, No. 10–CV–0408 (TJM/DEP), 2011 WL 7560647, at *1 (N.D.N.Y. Oct. 24, 2011) (directing plaintiff to produce social networking information related in any way to her emotional or mental state). *But see Kennedy v. Contract Pharm. Corp.*, No. 12-2664(JFB)(ETB), 2013 WL 1966219, at *1–2 (E.D.N.Y. May 13, 2013) (sustaining as vague a request for production seeking documents reflecting the plaintiff's "expression of an emotional feeling while utilizing a social networking site"); *Mailhoit,* 285 F.R.D. at 571–72 (rejecting request as too vague to meet the "threshold showing" that it was reasonably calculated to lead to the discovery of admissible evidence because even if "'any emotion' could be understood to encompass only communications containing specific emotive words (which the request does not identify), the category would still arguably require the production of many materials of doubtful relevance, such as a posting with the statement 'I hate it when my cable goes out'").

(March 21, 2014), including the identity of entities with whom he has sought employment:

> Interrogatory No. 11: For the period from January 1, 2009, through the date of your answers to these interrogatories, please identify:
>
> (a) the name and address of each person, firm or entity at which you have sought employment or self-employment, . . . ; and
>
> (b) the name and address of each person, firm and entity for whom you have worked as an employee, independent contractor or on any other basis in exchange for money or anything else, . . .; and
>
> For periods of time during which you were not employed and did not seek employment or self-employment, please identify the dates of those periods and the reason that you did not seek employment or self-employment during that time.
>
> For each employer or potential employer identified in your answer, please execute the attached Authorization to Release Employment Records.

Plaintiff's response to this interrogatory stated in full: "DJ & HOST SPECIAL EVENTS, AT VARIOUS LOCATIONS FOR RECOGNITION ONLY."[34]   Defendant contends that plaintiff has produced other documents, however, that show he was employed by Caravan until 2010 and that he has applied for employment at various companies following his discharge from defendant.

In his response to the motion to compel, plaintiff discussed his employment with (and termination by) Caravan, and consented to defendant obtaining his employment records from Caravan.   Plaintiff also stated that since his termination by defendant, he has sought employment with at least four companies, but "received turn down letters," some of which

---

[34]ECF doc. 33-1 at 70.

he attached to his response.[35]  The record also reflects that plaintiff has executed a generic (i.e., not addressed to any particular employer) "Authorization to Release Employment Records," as Interrogatory No. 11 requested.[36]  Thus, it appears that plaintiff has now provided the information requested in Interrogatory No. 11—defendant did not file a reply suggesting otherwise.  Accordingly, defendant's motion as to this discovery is denied as moot.

IT IS THEREFORE ORDERED:

1.  Defendant's motion to compel is granted with respect to Request No. 3.  By July 3, 2014, plaintiff shall inform defendant of the steps he has taken to recover responsive e-mails.

2.  Defendant's motion to compel is granted with respect to Interrogatory No. 7 and Request No. 9.  Plaintiff shall respond to this discovery by July 3, 2014.

3.  Defendant's motion to compel is granted with respect to Request No. 15 and granted, as limited herein, with respect to Request No. 18.  Plaintiff shall respond to this discovery by July 3, 2014.

4.  Defendant's motion to compel is denied as moot with respect to Interrogatory No. 11.

5.  Plaintiff is hereby informed that, within 14 days after he is served with a copy of this order, he may, pursuant to Fed. R. Civ. P. 72 and D. Kan. Rule 72.1.4(a), file written

---

[35]ECF doc. 34 at 3.

[36]ECF doc. 33-1 at 34.

objections to this order by filing a motion to review this order.  Plaintiff must file any objections within the 14-day period if he wants to have appellate review of this order.  If plaintiff does not timely file his objections, no court will allow appellate review.

Dated June 20, 2014, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge