## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ANTHONY M. SMITH,** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | )  **Case No. 13-2605** |
| **v.** | ) |
| | ) |
| **HILLSHIRE BRANDS COMPANY,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Anthony M. Smith, proceeding pro se, filed suit against defendant Hillshire Brands Company seeking damages for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Family and Medical Leave Act ("FMLA"). Specifically, plaintiff alleges that his employment was terminated in retaliation for filing a charge of discrimination under Title VII and for his use of leave under the FMLA. This matter is before the court on defendant's Motion for Summary Judgment (Doc. 71).

### I.  FACTS

Defendant set forth a total of sixty statements of fact in support of its summary judgment motion. In his opposition briefing, plaintiff failed to comply with the applicable rules of civil procedure and the local rules of this court. However, because of plaintiff's status as a pro se litigant, the court will construe plaintiff's response more liberally than it might construe a response filed by a licensed attorney. *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991) (citing *Overton v. United States*, 925 F.2d 1282 (10th Cir. 1990) for the proposition that liberal construal of pro se

pleadings includes review of summary judgment briefs).  As such, the court will deem admitted those facts to which plaintiff wholly failed to respond or otherwise controvert.  Moreover, to the extent plaintiff has declared defendants' factual assertions as contested, but where he failed to specifically controvert those assertions, the court deems those facts admitted as well.  D. Kan. Rule 56.1(a) ("All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.").

## A.  Defendant's Policies

On January 31, 2011, defendant hired plaintiff as a production technician at its Kansas City, Kansas, meat production facility.  Plaintiff worked for defendant until his employment was terminated on August 29, 2013.  Throughout plaintiff's employment, defendant had a policy that prohibited racial harassment or discrimination and contained a non-retaliation provision.  Defendant also had a Progressive Corrective Action Policy, which involved up to five levels of corrective action: (a) Verbal Reminder / Documented Conversation; (b) Level 1 (Documented Reminder); (c) Level 2 (Written Reminder); (d) Level 3 (Decision Making Leave / Final Warning); and (e) Termination.  Regarding attendance, defendant had a No-Fault Attendance Policy, which involved up to four levels of corrective action for attendance-related violations: (a) Verbal Warning; (b) Written Warning; (c) Final Written Warning / Suspension; and (d) Termination.  Finally, defendant had an FMLA leave policy, which set forth the reasons why an employee may take FMLA leave.  Along those lines, defendant had a Timekeeping Policy, making employees responsible for accurately recording the hours they work and providing that falsifying time records may result in disciplinary action, up to and including termination.  Plaintiff acknowledged receiving defendant's policies.

## B.  Plaintiff's Disciplinary History

Around mid-2011, Ezra McCon was assigned Operations Supervisor and became plaintiff's immediate supervisor.  In or about January 2013, Dontae Bronson replaced McCon as plaintiff's immediate supervisor.  Prior to his discharge in August 2013, plaintiff received the following disciplinary actions:

1.  On or about August 26, 2011, McCon issued plaintiff a "Verbal Warning" corrective action for violation of defendant's No-Fault Attendance Policy.

2.  On or about March 1, 2012, McCon issued plaintiff a "Documented Conversation" corrective action for showing up at the morning huddle meeting in street shoes, without his personal protective equipment.

3.  On or about March 9, 2012, Monte Metz, Department Manager, issued plaintiff a "Verbal Warning" corrective action for violation of defendant's No-Fault Attendance Policy.

4.  On or about March 26, 2012, McCon issued plaintiff a "Verbal Warning" corrective action for violation of defendant's No-Fault Attendance Policy.

5.  On or about April 20, 2012, McCon issued plaintiff a "Written Warning" corrective action for violation of defendant's No-Fault Attendance Policy.

6.  On or about April 24, 2012, McCon issued plaintiff a "Level 1" corrective action for taking an extended break.

7.  On or about April 25, 2012, Monte Metz issued plaintiff a "Level 2" corrective action for his involvement in a verbal altercation with another employee on the production floor.

8.  On or about April 26, 2012, McCon issued plaintiff a "Written Warning" corrective action for violation of defendant's No-Fault Attendance Policy.

9.  On or about June 29, 2012, McCon issued plaintiff a "1-day Suspension" corrective action for violation of defendant's No-Fault Attendance Policy.

10. On or about August 2, 2012, McCon and Metz issued plaintiff a "Level 3" corrective action for violating defendant's employee break procedures.

11. On or about December 19, 2012, Mike Cecil, Line Lead, and McCon issued plaintiff a "Level 3" corrective action for sending out too many leakers from his production line.

12. On or about January 11, 2013, Bronson issued plaintiff a "Verbal Warning" corrective action for violation of defendant's No-Fault Attendance Policy.

13. On or about March 13, 2013, Bronson issued plaintiff a "Written Warning" corrective action for violation of defendant's No-Fault Attendance Policy.

14. On or about March 26, 2013, Bronson issued plaintiff a "Final Written Warning" corrective action for violation of defendant's No-Fault Attendance Policy.

15. On or about June 13, 2013, Bronson issued plaintiff a "Final Written Warning" corrective action for violation of defendant's No-Fault Attendance Policy.

16. On or about July 11, 2013, Bronson issued plaintiff a "Final Written Warning" corrective action for violation of defendant's No-Fault Attendance Policy for absences recorded through June 29, 2013.

Plaintiff does not allege that any of the above-disciplinary actions were discriminatory or in retaliation for any protected activity in which he may have engaged.

### C.  Plaintiff's FMLA Leave

From August 3, 2012 through September 10, 2012, plaintiff took a medical leave of absence for reported anxiety and depression.  Prior to his return to work on September 11, 2012, plaintiff

requested, and defendant approved, intermittent FMLA leave for plaintiff's reported anxiety and depression. Defendant utilizes the services of third-party administrator Reed Group to manage and administer benefits available to its employees under the FMLA.

On July 8, 2013, plaintiff called-in before the start of his 5:30 a.m. shift, reporting he would arrive around 7:00 a.m. Sometime before 7:00 a.m., plaintiff tried to start his truck and realized it was broken down. Plaintiff called the repair shop and was informed they did not open until 8:00 a.m. At approximately 7:31 a.m., plaintiff sent a text message to Bronson, explaining that his truck had broken down and that he would not be in until after he dropped off his truck at the shop, which opened at 8:00 a.m. Plaintiff admits that, if his truck had not broken down, he would have arrived for work by 7:00 or 7:30 a.m. After dropping off his truck at the shop for repairs, plaintiff clocked in for work at approximately 8:46 a.m.

Two days later, plaintiff contacted the Reed Group and requested three hours of FMLA leave to cover the entirety of his morning absence on July 8, 2013. Plaintiff does not dispute that he took FMLA leave to take his truck to the shop when he was only authorized to take FMLA leave time if he was not feeling well, nor does plaintiff dispute this absence was not eligible to be classified as FMLA leave.

About a month later, on August 16, 2013, plaintiff informed Bronson he had another engagement that afternoon, so he was going to leave early and call it leave under the FMLA. On August 16, 2013, plaintiff contacted the Reed Group and requested three hours of FMLA leave time for his absence that afternoon. Plaintiff did not consult or have an appointment with any of his treating mental health professionals during his absence from work on August 16, 2013, and plaintiff admits his absence that day was not eligible to be classified as FMLA leave.

As a result of plaintiff's comment to Bronson on August 16, 2013—that he was going to leave early and call it leave under the FMLA—Bronson spoke with Susan Quinn in defendant's human resources department regarding plaintiff's possible abuse of FMLA leave time.  Bronson informed Quinn that he thought plaintiff intended to request FMLA leave for non-FMLA purposes.  On August 16, 2013, Quinn contacted the Reed Group and informed them she believed plaintiff had requested FMLA leave for a non-FMLA purpose on that day.  When Quinn contacted the Reed Group at that point, she was unaware that plaintiff had requested FMLA leave to get his truck repaired on July 8, 2013.

After confirming plaintiff's suspected abuse of FMLA leave time on August 16, 2013, Quinn asked Bronson to inform her of any other instances in which he believed plaintiff had used FMLA leave time for a non-qualifying absence.  In response, Bronson told Quinn about the July 8, 2013, incident.  Then, on or about August 20, 2013, Quinn contacted the Reed Group to report that she believed plaintiff had taken FMLA leave for a non-FMLA purpose on July 8, 2013.

On August 29, 2013, defendant made the decision to terminate plaintiff's employment due to his misuse of FMLA leave.  On September 4, 2013, defendant notified plaintiff of his discharge.  On September 6, 2013, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

### D.  Plaintiff's First EEOC Charge

Back on April 25, 2012, plaintiff wrote a letter to defendant's on-site human resources manager, Pedro Garcia, in which plaintiff complained about his supervisor McCon.  Plaintiff did not allege in his April 25, 2012, letter to Garcia that McCon was harassing or discriminating against him because of his race, color, religion, sex, national origin, or any other protected class.  Months later, on December 28, 2012, plaintiff contacted the EEOC to file a charge of discrimination (the "First

Charge").  At that time, plaintiff alleged he was being retaliated against by defendant for sending the April 25, 2012 letter to human resources.  However, on or about January 3, 2013, plaintiff returned to the EEOC to review and sign the First Charge, but he chose to sign a voluntary withdrawal instead.  Following plaintiff's withdrawal of his First Charge, the EEOC took no further action.   Neither McCon, Bronson nor Quinn had any knowledge of plaintiff's First Charge.

On April 18, 2013, months after Bronson had replaced McCon as plaintiff's supervisor, and shortly after receiving the March 26, 2013 "Final Written Warning" from Bronson, plaintiff contacted the EEOC to request that it proceed with filing his First Charge.  However, on or about April 29, 2013, because plaintiff failed to show for an appointment at the EEOC to review and sign his renewed First Charge, the EEOC took no further action.  Neither McCon nor any other supervisor had knowledge that plaintiff had contacted the EEOC to attempt to reinstate his First Charge.

## II. ANALYSIS

### A. Legal Standards

Summary judgment is appropriate when there are no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A movant that does not have the burden of persuasion at trial has the initial summary judgment burden of "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  If the movant makes this showing, the burden shifts to the nonmovant to set forth facts from which a rationale trier of fact could find for the nonmovant.  *Id.*

In this case, plaintiff does not have direct evidence of discrimination, so the court analyzes his claims under the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under this framework, plaintiff has the initial burden of establishing a prima facie

case of discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981).  If

plaintiff establishes a prima facie case, the burden shifts to defendant to come forward with a

legitimate, nondiscriminatory reason for its employment-related decision.  *Mitchell v. City of Wichita,*

*Kan.*, 140 F. App'x 767, 777 (10th Cir. 2005) (citing *McDonnell*, 411 U.S. at 802). If defendant sets

forth a legitimate, nondiscriminatory reason, a plaintiff must then "present [ ] evidence that the

defendant's proferred reason for the employment decision was pretextual—i.e. unworthy of belief."

*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (citation omitted).

### B.  FMLA Retaliation Claim

Plaintiff first asserts in this lawsuit that he was terminated in retaliation for taking FMLA leave.

To establish a prima facie case of FMLA retaliation, a plaintiff must show: (1) he availed himself of a

protected right under the FMLA; (2) the employer took an action against him that a reasonable

employee would have found materially adverse; and (3) there is a causal connection between the

protected activity and the adverse action.  *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1323 (10th Cir.

2005); *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (citing *Argo*

*v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) and *Chavez v. Thomas*

*& Betts Corp.*, 396 F.3d 1088, 1104 (10th Cir. 2005)).

#### 1.  Plaintiff Has Failed to Establish a Prima Facie Case of FMLA Retaliation

Here, there is no dispute that plaintiff availed himself of a protected right by requesting and

taking FMLA leave.  There also is no dispute that plaintiff suffered an adverse action when his

employment was terminated on or about August 29, 2013.  However, plaintiff cannot establish a causal

connection between his legitimate use of FMLA leave and defendant's termination of his employment.

After reviewing relevant portions of plaintiff's deposition testimony, it is clear to the court that, while

plaintiff has several explanations for his discharge, none of those explanations involve any unlawful FMLA retaliation by defendant.

Plaintiff testified that the only two individuals who retaliated against him were McCon and Bronson.  (Doc. 72-3 at 5.)  Plaintiff initially alleged that his employment was terminated because he was a public figure to his co-workers and that his supervisors just did not like him.  (*Id.* at 3.)  Plaintiff then explained that he was discharged because Bronson felt plaintiff was not listening to his new line lead—Armondo Katamura.  (*Id.* at 97.)  The court notes that plaintiff alleged in his September 6, 2013, Charge of Discrimination (the discrimination charge that forms the basis for this lawsuit) that Bronson retaliated against him for this reason—a disagreement between plaintiff and Katamura.

Plaintiff also testified that defendant actually fired him because of a collection of complaints from his co-workers and supervisors and because of his ongoing problems with McCon and Bronson. (*Id.* at 101–02.)  When asked, plaintiff admitted that his termination was ***not*** in retaliation for his use of intermittent FMLA leave: "They didn't retaliate against me for taking FMLA, they retaliated against me for the letters that I wrote."  (Doc. 72-3 at 103.)  Plaintiff has failed to show any causal connection between his legitimate use of FMLA leave and his discharge.   Accordingly, plaintiff has failed to establish a prima facie case of FMLA retaliation.

### 2.   Defendant Has Articulated a Legitimate, Non-Discriminatory Reason for Plaintiff's Discharge

Even if plaintiff could establish a prima facie case of FMLA retaliation, his claim nonetheless fails because defendant had a legitimate, non-retaliatory reason for his discharge, and plaintiff has no evidence that defendant's proffered reason was pretextual.

Plaintiff does not dispute that he requested FMLA leave to cover the time he needed to take his truck to the repair shop on July 8, 2013, and that this absence was not eligible to be classified as FMLA leave.  Plaintiff also does not dispute that he used his FMLA leave on August 16, 2013, and

that this absence was not eligible to be classified as FMLA leave.  Defendant has a timekeeping policy that expressly provides that falsifying time records is considered a serious matter and may result in disciplinary action, up to and including termination.  Moreover, plaintiff had accrued a lengthy history of discipline related to both attendance and performance issues—just a month or so earlier, plaintiff had been issued a "Final Written Warning" under defendant's No-Fault Attendance Policy.  The court determines that defendant's stated reason—plaintiff's fraudulent FMLA use—was a legitimate, non-retaliatory basis for terminating plaintiff's employment.  *Hanson v. Colo. Judicial Dep't*, 564 F. App'x 916, 920 (10th Cir. 2014) ("[T]he discovery of the fraudulent use of FMLA in clear violation of [defendant's code of conduct] independently constitutes a legitimate basis for [plaintiff's] termination.").

### 3.  Plaintiff Has Failed to Show Pretext

Because defendant has proffered a non-discriminatory reason for plaintiff's discharge, the burden falls back to plaintiff to show pretext.  "Pretext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. Gen. Elec. Astrospace,* 101 F.3d 947, 951-52 (3d Cir. 1996)).  "To avoid summary judgment, a party must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed.  Thus, a plaintiff's mere conjecture that his employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.,* 853 F.2d 768, 771–72 (10th Cir. 1988) (internal citations and quotations omitted) (alteration in the original).

-10-

Plaintiff has not raised a material issue of fact suggesting that defendant's termination decision was simply a pretext to disguise retaliatory motives.  Plaintiff has no evidence that defendant gave a false reason for his termination, acted contrary to any written or unwritten policy in terminating his employment, or treated similarly situated employees differently than plaintiff.  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).  Plaintiff admits that he did, in fact, claim FMLA leave for non-FMLA qualifying events.  Plaintiff also admits that he has no evidence that his termination was in retaliation for his use of FMLA time.  With no evidence that defendant's proffered reason for terminating plaintiff's employment is unworthy of belief, plaintiff's FMLA retaliation claim fails as a matter of law.  Defendant is entitled to summary judgment on plaintiff's FMLA retaliation claim.

### C.  Title VII Retaliation Claim

Plaintiff alleges he was discharged in retaliation for filing the First Charge with the EEOC.  A prima facie claim of retaliation under Title VII requires that: (1) plaintiff engaged in protected opposition to discrimination; (2) plaintiff suffered a materially adverse employment action; and (3) a causal connection exists between the protected activity and the materially adverse action.  *Paige v. Donovan*, 511 F. App'x 729, 734 (10th Cir. 2013).

#### 1.  Plaintiff Has Failed to Establish a Prima Facie Case of Title VII Retaliation

Plaintiff cannot make a prima facie showing because he has failed to establish that he engaged in protected activity.  While plaintiff alleged in the First Charge that he was being retaliated against for sending the April 25, 2012 letter to human resources, when plaintiff arrived at the EEOC to sign that charge, he instead signed a voluntary withdrawal.  Thus, plaintiff withdrew the First Charge before it was ever filed, it was never investigated by the EEOC, and none of plaintiff's supervisors was aware of plaintiff's attempted filing.

The court recognizes that an employee need not formally file a charge against his harasser to qualify as engaging in protected opposing activity.  *Wirtz v. Kan. Farm Bureau Servs., Inc.*, 274 F. Supp. 2d 1198, 1212 (D. Kan. 2003).  "It is well-established that an employee's express complaints to supervisors about perceived discriminatory practices constitutes protected activity."  *Id.* (citing *Garcia–Paz v. Swift Textiles, Inc.*, 873 F. Supp. 547, 559–60 (D. Kan. 1995)).  Here, plaintiff did not allege in his April 25, 2012 letter that he was being harassed or discriminated against based upon his race, color, religion, sex, national origin, or any other protected class.  Thus, the April 25, 2012 letter was not protected opposition to discrimination.  Accordingly, the court finds that neither the First Charge nor the April 25, 2012 letter constitutes protected activity.

Even if plaintiff were able to establish that his attempt to file the First Charge constitutes protected activity, there is no causal connection between his discussions with the EEOC and defendant's decision to terminate his employment.  Defendant terminated plaintiff's employment approximately nine months after plaintiff visited the EEOC regarding the First Charge.  This nine-month gap is too long to maintain a causal nexus between the protected activity and the adverse action, absent other evidence.  *See Hall v. Interstate Brands Corp.*, 395 F. App'x 519, 522 (10th Cir. 2010) (stating that a three-month time period between the protected conduct and adverse action was too long to establish causation without other evidence).  Here, plaintiff offers no other evidence of retaliation.  Additionally, plaintiff admits that neither McCon, Bronson, nor Quinn had any knowledge of the First Charge or were otherwise aware that plaintiff had visited the EEOC.  Because none of the individuals who plaintiff alleges retaliated against him were even aware he had contacted the EEOC, defendant's decision to terminate plaintiff's employment could not have been in retaliation for that alleged protected activity.

As discussed above, plaintiff also alleges in his September 6, 2013, Charge of Discrimination that he was retaliated against for his involvement in a disagreement with co-worker Katamaru. Plaintiff has made no allegation that his disagreement with Katamaru was in any way related to his race, sex, or his membership in any protected class, nor has plaintiff alleged he made any complaint about Katamaru that would bring the purported disagreement under the umbrella of protected activity. Plaintiff concedes he was never harassed or discriminated against by defendant because of his race, sex, or his membership in any other protected class.  Accordingly, plaintiff's disagreement with Katamaru does not amount to protected activity for purposes of a Title VII retaliation claim.  Plaintiff did not engage in any protected activity.  Plaintiff has failed to establish a prima facie case of Title VII retaliation.

### 2.   Plaintiff Has Failed to Show Defendant's Reason was Pretextual

Even if plaintiff could establish a prima facie case of Title VII retaliation, he cannot show that defendant's proffered reason for his termination is a mere pretext for unlawful retaliation.  As discussed above, defendant terminated plaintiff's employment because he took FMLA leave for non-qualifying absences.  Plaintiff does not dispute that he did so, nor has he offered any evidence that defendant's proffered reason is "so weak that a rational factfinder could infer that the expressed reason for terminating [the plaintiff] must have been pretextual."  *Satterlee v. Allen Press*, 274 Fed. App'x. 642, 647 (10th Cir. 2008).  Accordingly, plaintiff cannot establish that defendant's stated reason for terminating his employment was a pretext for Title VII retaliation.  Plaintiff's Title VII retaliation claim fails as a matter of law.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 71) is granted.  This case is closed.

Dated this 20th day of February, 2015, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**